# EXHIBIT A

UNITED STATE DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| FRANCESCA D'AMBRA, Plaintiff, | : | |
| v. | : | C.A. No. 06-352 S |
| NEW ENGLAND GAS CO., Defendant. | : | |

**DEFENDANT'S REVISED PRETRIAL MEMORANDUM**

Pursuant to the Court's Pretrial Order of September 5, 2006, in the above-captioned case, Defendant New England Gas Co. submits this pretrial memorandum.

**A. Theory of Defense and Expected Witnesses**

Defendant expects to prove the following in defense against Plaintiff's discrimination claim:

(a) that Brian Hunt, in consultation with John Crompton, Larry Denofio, and Stephanie Eddleston made the decision to hire Plaintiff as a Customer Field Services ("CFS") apprentice;

(b) that Plaintiff was given on-the-job training, along with five other apprentices, from August 2005 through January 2006;

(c) that Plaintiff was evaluated by the CFS supervisors over this time period, including a week of close evaluation by those supervisors in January 2006;

(d) that after a five-and-one-half month training period, the CFS supervisors concluded that her performance was not satisfactory;

(e) that the conclusion that Plaintiff's performance was unsatisfactory after the five-and-one-half month training period was based upon several factors, including, but not limited to:

1. her lack of demonstrated knowledge regarding her job tasks;
2. her lack of physical ability in carrying out certain job tasks;
3. her lack of ability and skill in handling necessary tools;
4. her lack of receptiveness to suggestions and criticism;
5. her failure to complete and submit time sheets properly;
6. her difficulty communicating effectively with customers;
7. her difficulty map-reading and navigating the field service trucks; and
8. her general lack of improvement over the final two months of her tenure.

(f) that based on Plaintiff's unsatisfactory performance, Brian Hunt, in consultation with Mario Carlino, John Crompton, Larry Denofio, Robert Langlois, Robert Ganem, and David Coombs, made the decision to terminate Plaintiff; and

(g) that Plaintiff's gender did not have any bearing on the decision to terminate.

Defendant expects to call the following witnesses,[1] who are expected to testify in the manner indicated:

(a) Mario Carlino. Mr. Carlino will testify regarding the purpose of the Customer Field Service apprentice program, how the program was

[1] As discussed in section D, infra, Defendant will file a motion in limine to exclude testimony from Plaintiff's co-workers who (a) did not play any part in the decision to terminate her and (b) otherwise did not evaluate her for the purpose of informing the decision to continue employing Plaintiff or to terminate her. To the extent this motion is denied, Defendant respectfully requests the opportunity to supplement this list with additional field service technician witnesses to testify regarding her work performance. Those witnesses would be: Keith Beyers, Bill Greene, Charlie Brown, Gary Fortin, Bob Bruscini, Steve Kirby, Frank O'Leary, and Calvin Hopkins.

conducted, the reports he received about Plaintiff's performance from her supervisors, his monthly meetings with Plaintiff to discuss her performance, the general job requirements of CFS technicians, safety issues related to job tasks of CFS technicians, and the decision ultimately to terminate Plaintiff.

(b) Brian Hunt. Mr. Hunt will testify regarding his decision to hire Plaintiff, his impressions of her work performance, reports about Plaintiff's performance he received from her supervisors and co-workers, his personal observations of Plaintiff's work performance, the general job requirements of CFS technicians, safety issues related to job tasks of CFS technicians, and the decision ultimately to terminate Plaintiff.

(c) Robert Ganem. Mr. Ganem will testify regarding his personal observations of Plaintiff, his written evaluations of her, his overall impressions of her work performance, and the decision ultimately to terminate Plaintiff.

(d) Robert Langlois. Mr. Langlois will testify similarly to Mr. Ganem.

(e) Larry Denofio. Mr. Denofio will testify similarly to Mr. Ganem.

(f) David Coombs. Mr. Coombs will testify similarly to Mr. Ganem.

(g) John Crompton. Mr. Crompton will testify similarly to Mr. Ganem.

(h) David Andrews. Mr. Andrews will testify about the time he spent working with, and personally observing, Plaintiff, for the purpose of reporting back to Mr. Hunt about Plaintiff's performance, and the substance of his report to Mr. Hunt.

(i) Charlie Rugg. Mr. Rugg will testify similarly to Mr. Andrews.

(j) Joan Chafee. Ms. Chafee will testify regarding the hiring of Plaintiff, her meeting(s) with Plaintiff to discuss the company's non-discrimination and non-harassment policies, Plaintiff's failure to complain at any time about treatment she perceived to be discriminatory, the lack of any prior complaints about any of Plaintiff's supervisors, and the termination of Plaintiff.

(k) Stephanie Eddleston. Ms. Eddleston will testify regarding the selection process for the hiring of apprentices, including Plaintiff.

**B. Points and Authorities**[2]

1. Plaintiff does not have direct evidence of discrimination. Plaintiff's testimony, if taken to be true, would establish only (1) that some of her supervisors asked her why she would want to work in a job that had typically been an all-male field and (2) that some of her supervisors expressed skepticism that Plaintiff would be able to perform certain job tasks given her small size and lack of strength. Such comments do not, as a matter of law, constitute direct evidence of discrimination. See, e.g., Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 (11th Cir. 1998) (supervisor's alleged admission that "she had difficulty in understanding Afro-Americans, and that further, her experience and interaction up to this time had been minimal with respect to black employees, and that [she] identified a bias against blacks

[2] When applying state antidiscrimination statutes such as R.I. Gen. Laws § 42-112-1 et seq., under which Plaintiff has prosecuted her case, the Rhode Island Supreme Court routinely looks for guidance from federal courts interpreting Title VII. See Croce v. State, 881 A.2d 75, 79-80 (R.I. 2005) (discussing several First Circuit cases in analysis of continuing violation theory under, *inter alia*, RICRA); DeCamp v. Dollar Tree Stores, Inc., 875 A.2d 13, 21 (R.I. 2005); Center for Behavioral Health, Inc. v. Barros, 710 A.2d 680, 685 (R.I. 1998) (citing Newport Shipyard v. Rhode Island Comm'n for Human Rights, 484 A.2d 893, 897-98 (R.I. 1984)). Thus, Defendant cites to both federal and state employment discrimination cases in discussing the applicable law in this memorandum (including proposed jury instructions, infra).

and she found that they were difficult for her to trust or get along with," not direct evidence of discrimination); Heim v. Utah, 8 F.3d 1541, 1546-1547 (10th Cir. 1993) ("[A]n offer of . . . discriminatory statements, from which it was argued that the determining cause of an employment decision might be inferred, [is] not direct evidence of causation on the employment decision.") (internal quotes and citations omitted); Dunnom v. Bennett, 290 F. Supp. 2d 860, 868 (S.D. Ohio 2003) (supervisor's alleged statement that "women did not belong" not direct evidence of discrimination).

2. Plaintiff must therefore establish a *prima facie* case of gender discrimination under the *McDonnell Douglas* framework. To do so, she must prove (1) that she is a member of a protected class; (2) that she was performing her job at a level that rules out the possibility that she was fired for inadequate job performance; (3) that she suffered an adverse employment action; and (4) that the circumstances of her termination give rise to an inference of discrimination. See DeCamp v. Dollar Tree Stores, 875 A.2d 13, 21 (R.I. 2005). Plaintiff will be unable to prove the second and fourth prongs of her *prima facie* case. Plaintiff cannot show that she was performing her job as an apprentice satisfactorily. Nor does she have any evidence that would support an inference of discrimination in her termination. If Plaintiff fails to prove either prong of her *prima facie* case, Defendant will be entitled to judgment as a matter of law.

3. If Plaintiff establishes a prima facie case, Defendant must produce evidence that its decision was based upon legitimate, nondiscriminatory reasons. See id. Defendant will submit ample evidence that Plaintiff's performance was not satisfactory and that she was terminated for this reason, not because of her gender.

4. Plaintiff must then present evidence sufficient for a reasonable jury to find that Defendant's explanation for her termination is pretextual. See id. at 21-22. If Plaintiff is unable

to put forth evidence from which a reasonable jury could conclude that Defendant's explanation for her termination is, in fact, untrue, then Defendant will be entitled to judgment as a matter of law.

5. The "same actor inference" is directly applicable to this case. When the individual who hires a person is the same person who fires her, there is a strong inference that discrimination did not motivate the employment decision. See Buhrmaster v. Overnite Trans. Co., 61 F.3d 461, 463 (6th Cir. 1995). The same-actor inference "is applicable as long as one management-level employee played a substantial role in both the hiring and firing of the plaintiff." Ramos v. Marriott Int'l, 134 F. Supp. 2d 328, 345 (S.D.N.Y. 2001) (citing Campbell v. Alliance Nat'l Inc., 107 F. Supp. 2d 234, 250 (S.D.N.Y. 2000) and Ralkin v. New York City Transit Auth., 62 F. Supp. 2d 989, 1000 (E.D.N.Y. 1999)). The inference is further strengthened when there is a short period of time between the hiring and firing of the plaintiff. Buhrmaster, 61 F.3d at 463. The First Circuit has approved of the use of a same actor inference jury instruction where the facts of the case warrant it. See Kelley v. Airborne Freight Co., 140 F.3d 335, 351 (1st Cir 1998). Here, Defendant will show that the group of managers, led by Brian Hunt, which made the decision the hire Plaintiff, substantially overlapped with the group, also led by Brian Hunt, that decided to fire her approximately six-months later. Thus, the jury should be instructed that it may, but is not required to, infer from this evidence that the decision to terminate the plaintiff's employment was not motivated by sex. Buhrmaster, 61 F.3d at 463; see Kelley, 140 F.3d at 351.

6. Defendant had the legal right to terminate Plaintiff's employment at any time and for any reason that was not discriminatory. It is undisputed that Plaintiff's employment was at-will. Thus, even if the jury disagrees with Defendant's judgment regarding Plaintiff's work

performance – and, by extension, its decision to terminate her – the jury must be instructed that it still cannot find in favor of Plaintiff *unless* it finds that her termination was the result of gender discrimination. See Thomas v. Eastman Kodak Co., 183 F.3d 38, 64 (1st Cir. 1999) (quoting Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1996)) ("[The antidiscrimination laws do] not grant relief to a plaintiff who has been discharged unfairly, even by the most irrational of managers, unless facts and circumstances indicate that discriminatory animus was the reason for the decision.").

7. Plaintiff failed to mitigate her alleged damages. Plaintiff is required by law to take reasonable steps to mitigate any losses stemming from her allegedly discriminatory termination. See Hazel v. United States Postmaster Gen., 7 F.3d 1, 5 (1st Cir. 1993); Daily v. Societe Generale, 108 F.3d 451, 458 n.1 (2d Cir. 1997). Defendant will show that Plaintiff (a) failed reasonably to seek alternative suitable employment and (b) voluntarily quit her most steady and lucrative subsequent job without good reason. The jury should be instructed regarding Plaintiff's failure to mitigate damages so that it may reduce damages accordingly in the event that it finds that Plaintiff's termination was discriminatory.

8. Reinstatement is an equitable remedy that can only be ordered by the Court. The jury cannot order reinstatement as part of any damage award, as reinstatement is an equitable remedy that falls strictly within the discretion of the court. See Brochu v. City of Riviera Beach, 304 F.3d 1144, 1162 n.31 (11th Cir. 2002) (citing Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 847-48 (2001)) ("[R]einstatement . . . is a form of equitable relief which is determined by the court."); see also Partin v. St. Johnsbury Co., 447 F. Supp. 1297, 1303 n.6 (D.R.I. 1978).

8a. The award of front pay is an equitable remedy that can only be ordered by the Court. The jury cannot order reinstatement as part of any damage award, as front pay is an

equitable remedy that falls strictly within the discretion of the court. See Lussier v. Runyon, 50 F.3d 1103, 1108 (1st Cir. 1995) ("[F]ront pay, within the employment discrimination universe, is generally equitable in nature."); cf. Moran v. GTECH Corp., 989 F. Supp. 84, 89 (D.R.I. 1997) (discussing equitable nature of front pay award under Rhode Island leave act); Shoucair v. Brown Univ., 2004 WL 2075159, at *15-16 (R.I. Super. Ct. Sept. 9, 2004) (Gibney, J.) (discussing equitable nature of front pay award in Fair Employment Practices Act context).

9. Plaintiff is precluded from seeking punitive damages as a matter of law. The party seeking punitive damages has the burden of producing evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality, which for the good of society and warning to the individual, ought to be punished. Palmisano v. Toth, 624 A.2d 314, 318 (R.I. 1993) (internal quotes and citations omitted). The standard in Rhode Island for imposing punitive damages is rigorous and will be satisfied only in instances wherein a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages. Id. (citing Davet v. Maccarone, 973 F.2d 22, 27 (1st Cir.1992)). Whether a party seeking punitive damages has met the high standard imposed on such an award is a question of law for the trial justice. Id. Plaintiff simply cannot show that Defendants conduct in this case "amount[ed] to criminality," thus justifying an award of punitive damages. Additionally, Defendant issued and enforced in good faith a written non-discrimination policy. In similar circumstances where federal law governed, such action alone insulated the employer from a punitive damage claim. Harris v. L & L Wings, 132 F.3d 978, 983 (4th Cir. 1997). "Holding employers liable for punitive damages when they engage in good faith efforts to comply with [antidiscrimination laws]" is incompatible with the common law principle "that it is improper ordinarily to award punitive damages against one who himself is

personally innocent and therefore liable only vicariously." Kolstad v. American Dental Ass'n, 527 U.S. 526, 544 (1999).[3]

**C. Intended Exhibits**

Defendant intends to offer the following exhibits for the purposes indicated:

I. Relating to Hiring Process

(a) CFS Apprentice Candidate Ranking Chart (DEF 000358-59). Offered to show Plaintiff's ranking and related comments and notations alongside those for other candidates for the apprentice position

(b) Plaintiff's Resume (DEF 000345). Offered to show what knowledge Defendant had of Plaintiff's experience and asserted skills during hiring process.

(c) First Customer Field Service Interview Questions and Notes Regarding Plaintiff (DEF 000347-48). Offered to show Defendant's notes and impressions regarding Plaintiff from pre-employment interview.

(d) Second Customer Field Service Interview Questions and Notes Regarding Plaintiff (DEF 000349). Offered for the same reasons as exhibit (c) above.

(e) Plaintiff's Electrical Entrance Exam (DEF 000350). Offered to show Plaintiff's performance on pre-employment electrical exam.

(f) Offer of Employment Letter (DEF 000068). Offered to show terms, conditions, and fact of Plaintiff's employment.

[3] To the extent the Court decides that a punitive damages jury instruction is appropriate, Defendants respectfully request the opportunity to submit proposed instructions on that issue.

(g) New England Gas Company Apprentice Check-off List (DEF 000041). Offered to show that Plaintiff received copies of Defendant's anti-harassment and anti-discrimination policies.

(h) Defendant's Anti-Discrimination and Anti-Harassment Policies. These policies will be offered to show Defendants good faith compliance with the law, and to establish the existence of a reporting mechanism for perceived discriminatory conduct.

II. Plaintiff's Written Performance Evaluations

(i) August 20, 2005 Review by Larry Denofio (DEF 000094). Offered to show Larry Denofio's impressions and written evaluation of Plaintiff's performance stemming from an on-site review.

(j) September 7, 2005 Performance Appraisal by Robert Ganem (DEF 000241-42). Offered to show Robert Ganem's impressions and evaluation of Plaintiff's performance as of the date of the review.

(k) October 3, 2005 Performance Appraisal by Robert Ganem (DEF 000096-97). Offered for the same purposes as exhibit (j).

(l) November 2, 2005 Performance Appraisal by Robert Ganem (DEF 000274-75). Offered for the same purposes as exhibit (j).

(m) November 16, 2005 CFS Field Report by Robert Langlois (DEF 000112). Offered to show Robert Langlois' impressions and written evaluation of Plaintiff's performance stemming from an on-site review.

(n) January 16, 2006 Performance Appraisal by Robert Langlois (DEF 000300-01). Offered to show Robert Langlois' impressions and

evaluation of Plaintiff's performance for November and December 2005, as well as one day of close evaluation during first week of January 2006.

(o) January 4, 2006 Performance Appraisal by Larry Denofio (DEF 000304-05). Offered to show Larry Denofio's impressions and evaluation of Plaintiff's performance during one day of close evaluation on January 4, 2006, and in general.

(p) January 5, 2006 Performance Appraisal by John Crompton (DEF 000302-03). Offered to show John Crompton's impressions and evaluation of Plaintiff's performance during one day of close evaluation on January 5, 2006, and in general.

(q) January 19, 2006 Performance Appraisal by Brian Hunt (DEF 000298-99). Offered to show John Crompton's impressions and evaluation of Plaintiff's performance during one day of close evaluation during first week of January 2006, and in general.

III. Comparative Numerical Evaluation of Apprentices

(r) September 6, 2005 "CFS Evaluation of Temps" (DEF000090-91). Offered to show Plaintiff's numerical performance rating as compared to the other apprentices in her group as of the date of the evaluation.

(s) October 4, 2005 "CFS Evaluation of Temps" (DEF 000169-70). Offered to show Plaintiff's numerical performance rating as compared to the other apprentices in her group as of the date of the evaluation.

(t) October 4, 2005 "CFS Evaluation of Temps" with Handwritten Adjustments (DEF 000099-100). Offered to show Plaintiff's numerical

performance rating as compared to the other apprentices in her group as of the date of the evaluation.

(u) November 2, 2005 "CFS Evaluation of Temps" (DEF 000102-03). Offered to show Plaintiff's numerical performance rating as compared to the other apprentices in her group as of the date of the evaluation.

IV. Handwritten Notes Regarding Plaintiff's Performance

(v) Mario Carlino's Notes from September 6, 2005 Performance Review Meeting (DEF 000222-23). Offered to show Defendant's efforts (1) to give Plaintiff full and fair chance to prove she could perform the job satisfactorily and (2) to make Plaintiff feel more comfortable on the job since she started several weeks behind other apprentices.

(w) Mario Carlino's Notes from November 2, 2005 Performance Review Meeting (DEF 0000271). Offered to show Defendant's willingness to give Plaintiff every opportunity to prove she had the physical capability to perform her job, despite misgivings.

(x) Mario Carlino's Undated Notes from Conversations with Keith Beyers, Charlie Rugg, and Bill Shields (DEF 000272-73). Offered to show negative feedback from CFS technicians with whom Plaintiff worked on a one-on-one basis.

(y) Mario Carlino's Notes from December 13, 2005 Performance Review Meeting (DEF 000286). Offered to show specific areas in which Defendant believed Plaintiff was struggling as of mid-December 2005.

(z) Mario Carlino's Notes from December 28, 2005 (DEF 000289). Offered to show negative feedback received from CFS technician Charlie Rugg regarding Plaintiff's performance while Rugg worked with her on a one-on-one basis.

(aa) Mario Carlino's Notes from January 19, 2006 (DEF 000284). Offered to show topics of discussion at meeting where it was determined that Plaintiff's performance was not satisfactory and that she should be released.

V. Summary Memoranda Regarding Plaintiff's Performance and Decision to Terminate

(bb) Memorandum by Mario Carlino Dated December 16, 2005 (DEF 000117-19). Offered to show summary of Defendant's evaluation of Plaintiff's performance, including specific areas of concern and steps to be taken going forward, as of the date of the memorandum.

(cc) Memorandum by Mario Carlino Dated January 24, 2006 (DEF 000025-28). Offered to show summary of Defendant's evaluation of Plaintiff's performance as of the date of the memorandum, including explanation of final decision to discharge Plaintiff.

**D. Anticipated Motions in Limine**

Defendant intends to file one motion in limine to exclude testimony from Plaintiff's co-workers who (a) did not play any part in the decision to terminate her and (b) otherwise did not evaluate her for the purpose of informing the decision to continue employing Plaintiff or to terminate her. Defendant proposes that its anticipated Motion in Limine should be due on or about January 19, 2006.

**E. Proposed Jury Instructions**

Please see Exhibit A, attached, for Defendant's proposed jury instructions.

**F. Probable Length of Trial**

Defendant estimates that the time required for trial will be four (4) days.

Respectfully submitted,

DEFENDANT NEW ENGLAND GAS CO.

By its attorneys,

NIXON PEABODY LLP

/s/ Neal J. McNamara
Neal J. McNamara (#4249)
Matthew J. Frankel (#7293)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
nmcnamara@nixonpeabody.com
mfrankel@nixonpeabody.com

Dated: February 19, 2007

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the within document was forwarded to the following persons via first class mail, postage pre-paid, this 19th day of February, 2007.

Bernard P. Healy, Esq.
750 East Street
Pawtucket, RI

/s/ Neal J. McNamara

# EXHIBIT A

**Burden of Proof on Plaintiff**

In this case, like most, the law places the burden of proof on the plaintiff. All this means is that the law imposes upon the plaintiff the obligation or responsibility of proving his/her claim. The law requires that one who advances a proposition has the burden of sustaining its validity. Because the plaintiff is advancing the proposition that the defendant should be held responsible for some harm it caused to the plaintiff, it is the plaintiff who has the responsibility of producing evidence which leads you to believe that what the plaintiff claims is more likely true than not. The defendant, on the other hand, has no obligation to produce evidence concerning the plaintiff's claim. The defendant does not have to disprove what the plaintiff claims is true. The burden is on the plaintiff to prove each of the elements of her claim to you.

**SUPPORTIVE AUTHORITY**

DiLibero v. Swenson, 593 A.2d 42 (R.I. 1991); Paramount Office Supply Co. Inc. v. D.A. MacIsaac, Inc., 524 A.2d 1099 (R.I. 1987); Barbieri v. E.M. Young Co., 82 R.I. 382, 110 A.2d 263 (1954).

**Preponderance of the Evidence**

In addition to imposing the burden of proof on a plaintiff, the law also requires that the proof and support of any given claim reach a certain level or standard. In this case the level of proof required is proof by a preponderance of the evidence. To prove something by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered with that opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true. So, proof by the preponderance of the evidence means proof by the greater weight of the evidence. In other words, a claim must be proved by evidence that weighs more persuasively in the minds of jurors. In proving his/her claim, a plaintiff must prove each and every element of that claim by a preponderance of the evidence.

**SUPPORTIVE AUTHORITY**

Rhode Island Model Civil Jury Instructions (2002), § 302.1; O'Malley, Grenig, Lee, Federal Jury Practice & Instructions (5th ed.), § 171.61.

**<u>Basic Nature of Issue to Be Resolved</u>**

The plaintiff accuses the defendant of gender discrimination in violation of the Rhode Island Civil Rights Act. To succeed on her claim, the plaintiff must prove by a preponderance of the evidence that the defendant terminated her because of her gender.

**SUPPORTIVE AUTHORITY**

<u>Thomas v. Eastman Kodak Co.</u>, 183 F.3d 38, 58 (1st Cir. 1999).

**Determinative Factor/Causation**

The plaintiff need not show that gender discrimination was the only or predominant factor that motivated the defendant. In fact, you may decide that other factors were involved as well in the defendant's decision-making process. In that event, in order for you to find for the plaintiff, you must find that she has proven that, although there were other factors, she would not have been terminated without the gender discrimination. Put another way, the plaintiff's gender must have been the determinative factor in the defendant's decision to terminate her in order for you to find in her favor. If you find that the plaintiff was discharged for reasons other than her gender you must find for the defendant.

**SUPPORTIVE AUTHORITY**

Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 34 (1st Cir. 2001); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000); Cary v. Mount Desert Island Hosp., 156 F.3d 31, 39 (1st Cir. 1998); Provencher v. CVS Pharmacy, 145 F.3d 5, 10 (1st Cir. 1998).

**Subjectivity in Performance Evaluations**

The defendant has presented evidence that several of the plaintiff's supervisors evaluated her negatively after assessing her performance in the field. The presence of subjectivity in the plaintiff's performance evaluations is not grounds for challenging those evaluations as discriminatory. Thus, unless the plaintiff has proven, by a preponderance of the evidence, that her supervisors evaluated her as they did because she was a woman – rather than based on their observations of her in the field – her negative evaluations cannot constitute evidence of discrimination.

**SUPPORTIVE AUTHORITY**

Vaughan v. Metrahealth Cos., 145 F.3d 197, 204 (4th Cir. 1998); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 780 (8th Cir. 1995); see Casey v. Town of Portsmouth, 861 A.2d 1032, 1038-39 (R.I. 2004).

**Employer's Reliance on Later, Rather than Earlier, Evaluations**

The defendant has put forth evidence that the plaintiff's evaluations in two months before her termination were significantly more negative than her evaluations for the earlier period of her apprenticeship. There is nothing inherently discriminatory in the defendant's choosing to rely on the plaintiff's later performance evaluations more heavily than earlier performance evaluations when it decided to terminate the plaintiff's performance. Thus, the fact that the plaintiff's earlier evaluations may have been more positive than her later evaluations does not constitute evidence of discrimination.

**SUPPORTIVE AUTHORITY**

Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 780 (8th Cir. 1995).

**Same Actor Inference**

You have heard that a group led by Brian Hunt, which hired the plaintiff, was composed of substantially the same people as the group, also led by Brian Hunt, who decided to terminate her. When the individual or group of individuals who hires a person is the same as the individual or group of individuals who fire her, there is a strong inference that discrimination did not motivate the employment decision. This inference is further strengthened when there is a short period of time between the hiring and firing of the plaintiff. You may, but are not required to, infer from this evidence that the defendant's decision to terminate the plaintiff's employment was not motivated by sex.

**SUPPORTIVE AUTHORITY**

Buhrmaster v. Overnite Trans. Co., 61 F.3d 461, 463 (6th Cir. 1995); Ramos v. Marriott Int'l, 134 F. Supp. 2d 328, 345 (S.D.N.Y. 2001); see Kelley v. Airborne Freight Co., 140 F.3d 335, 351 (1st Cir 1998) (same actor inference instruction may be used where appropriate).

**At Will Employment/Business Judgment**

The plaintiff was an at-will employee, which means that she and the defendant each retained the right to terminate the employment relationship at any time and for any reason, so long as that reason was not discriminatory. The defendant has put forth evidence that after approximately six months on the job, it made the business judgment that the plaintiff lacked the skill and expertise to perform her job adequately and therefore terminated her. Even if you disagree with the defendant's business judgment regarding plaintiff's inability to do her job adequately, you cannot find in favor of the plaintiff unless you find that she has proven her termination was due to her gender.

## SUPPORTIVE AUTHORITY

Thomas v. Eastman Kodak Co., 183 F.3d 38, 64 (1st Cir. 1999); Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1996).

**Damages: Generally and Burden on Plaintiff**

The fact that I instruct you on damages does not represent any view by me that you should or should not find the defendant liable. If, however, you do find that the defendant discriminated against the plaintiff based on her gender, then you must determine an amount that is fair compensation for the plaintiff's damages. The burden is on the plaintiff to prove by a fair preponderance of the evidence that she has suffered damages as a proximate result of defendant's allegedly discriminatory conduct. The burden is also on the plaintiff to prove by a preponderance of the evidence the extent or amount to which she has suffered loss. The plaintiff must prove by a fair preponderance of the evidence the particular element of damage that she suffered and the extent of such damage.

**SUPPORTIVE AUTHORITY**

Tom Shaw, Inc. v. Derecktor, 639 F. Supp. 1064 (D.R.I. 1986); Jackson v. Choquette & Co., 78 R.I. 164, 80 A.2d 172 (1951); Bruno v. Caianiello, 121 R.I. 913, 404 A.2d 62 (1979); Worsley v. Corcelli, 119 R.I. 260, 377 A.2d 215 (1977); see O'Malley, Grenig, Lee, Federal Jury Practice & Instructions (5th ed.), § 171.90.

**Compensatory Damages**

If you find that the defendant discriminated against the plaintiff, you may award compensatory damages only for injuries that the plaintiff proves were caused by the defendant's allegedly wrongful conduct. The damages you award must be fair compensation – no more and no less.

You may award damages for any pain, suffering, or mental anguish that the plaintiff experienced as a consequence of the defendant's allegedly discriminatory termination of the plaintiff. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. However, any award you make should be fair in light of the evidence presented at trial.

In computing the plaintiff's compensatory damages, you must not include the plaintiff's expenditures in connection with this litigation, including any attorney's fees. Should you find in favor of the plaintiff, I will determine these amounts. Additionally, compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendants. Nor can you award damages for distress arising from this lawsuit.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing the award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. The law does not require that the plaintiff prove her damages with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

**SUPPORTIVE AUTHORITY**

O'Malley, Grenig, Lee, Federal Jury Practice & Instructions (5th ed.), § 171.90; see R.I. Gen. Laws § 42-112-2; Zimmerman v. District Fed. Credit Union, 262 F.3d 70, 79 (1st Cir. 2001).

**Plaintiff's Duty to Mitigate**

The plaintiff must make every reasonable effort to minimize or reduce her asserted damages for loss of compensation by seeking employment. This is referred to as "mitigation of damages." The defendant must prove by a preponderance of the evidence that the plaintiff failed to mitigate her asserted damages for loss of compensation.

If you determine that the plaintiff is entitled to lost compensation, you must reduce that loss by (1) what the plaintiff actually earned and (2) what the plaintiff could have earned by reasonable effort during the period from her discharge to the date of trial.

You must decide whether the plaintiff acted reasonably in not seeking or accepting another job. If you determine that the plaintiff did not make reasonable efforts to obtain another similar job, you must decide whether any damages resulted from the plaintiff's failure to do so. You must not compensate the plaintiff for any portion of her asserted loss of compensation resulting from her failure to make reasonable efforts to reduce her loss of compensation.

**SUPPORTIVE AUTHORITY**

O'Malley, Grenig, Lee, Federal Jury Practice & Instructions (5th ed.), § 171.95 (collecting cases); see Hazel v. United States Postmaster Gen., 7 F.3d 1, 5 (1st Cir. 1993); Daily v. Societe Generale, 108 F.3d 451, 458 n.1 (2d Cir. 1997); cf. Clifford McFarland, Read & Lundy, Inc. v. Brier, 769 A.2d 605 (R.I. 2001) (in context of contract damages).